UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:23-cr-00062-Z-BR (2) |
| | § | |
| KATHY TERESA DAVILA (2) | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER
GRANTING MOTION FOR CONTINUED RELEASE**

By *Order Adopting Report and Recommendation Concerning Plea of Guilty,* filed February 26, 2024, this matter has been referred for determination of whether the Court should not order Defendant's detention, pending sentencing, under the exceptions to mandatory detention identified in 18 U.S.C. § 3143(a)(2) and § 3145(c). (*See* ECF No. 70, at 3 (referring "this matter to the [undersigned] … to determine whether Section 3143(a)(2)'s or Section 3145(c)'s exceptions are satisfied")). Specifically, those provisions require that a defendant convicted for certain offenses be detained unless: (l)(a) the court finds there is a substantial likelihood that a motion for acquittal or new trial will be granted, or (b) the Government has recommended that no sentence of imprisonment be imposed, or (c) exceptional circumstances are clearly shown under § 3145(c) why the defendant's detention would not be appropriate; *and* (2) the court finds by clear and convincing evidence that defendant is not likely to flee or pose a danger to any other person or the community if released. *See* 18 U.S.C. § 3143(a)(2) and § 3145(c); *United States v. Carr,* 947 F.2d 1239, 1240 (5th Cir. 1991).

Before the Court is Defendant's Motion for Continued Release, filed March 15, 2024. (ECF No. 72.) This Motion is unopposed, (*Id.* at 6), and the Government did not file a brief contesting

Defendant's continued release. At the detention hearing held on March 28, 2024, the Assistant United States Attorney also confirmed that the Government was not opposed to Defendant's continued release. (Detention Hr'g, Mar. 28, 2024, Audio at 1:40 P.M). After considering the parties' filings, proffered evidence, argument, and applicable law, Defendant's motion for continued pretrial release is GRANTED.

## I.   Background

On July 27, 2023, the grand jury indicted Defendant in a multidefendant, multi-count indictment on charges of conspiracy to distribute and possess with intent to distribute methamphetamine. (ECF No. 3). Defendant was arrested and made her initial appearance before the Court on August 21, 2023. (ECF Nos. 11, 15). The Government moved for pretrial detention, and this Court held a hearing on the motion on August 30, 2023. (ECF No. 10). This Court subsequently denied the Government's Motion for Pretrial Detention, and the Defendant was released on a $10,000 unsecured bond with certain specific conditions of release. (ECF Nos. 41, 44).

Defendant signed a written plea agreement with the Government on January 22, 2024, pleading guilty to Count Two of the indictment, Distribution and Possession with Intent to Distribute Methamphetamine, in violation of 21 U.S.C §§ 841(a)(1) and 841(b)(1)(C). (ECF No. 59). The undersigned recommended that Defendant's plea be accepted and on February 26, 2024, the Honorable United States District Judge Matthew J. Kacsmaryk adopted the Report and Recommendation and adjudged Defendant guilty of Distribution and Possession with Intent to Distribute Methamphetamine. (ECF Nos. 68, 70).

Defendant is set for sentencing on June 11, 2024. (ECF No. 69, at 4). This offense is among those listed in 18 U.S.C. § 3142(f)(l)(A)—(C), which requires mandatory detention absent an applicable exception. Judge Kacsmaryk has referred Defendant's motion to the undersigned for

resolution. (ECF No. 70, at 3).

In her motion for continued release, Defendant alleges that she is not a flight risk or danger to the community, and that her "extraordinary efforts to regain custody" of her five-year-old son, supported by opinions from Defendant's Child Protective Services ("CPS") caseworker, her son's *ad litem*, and her son's Court Appointed Special Advocate ("CASA"), warrant additional time on release, particularly where the Government is unopposed to this relief. (ECF No. 72, at 5-8).

## II. Analysis

"[W]hether a defendant should be released pending trial and whether a defendant should be released pending sentencing or appeal are distinct inquiries governed by different provisions of the Bail Reform Act." *United States v. Lee*, No. 01-30876, 2001 WL 1747632, at *1 (5th Cir. Dec. 4, 2001). Section 3143 governs release pending sentencing. *See* Fed. R. Crim. P. 46(c). Because "[a] convicted defendant has no constitutional right to bail," § 3143(a) "'establishes a presumption against its' being granted" (*United States v. Olis*, 450 F.3d 583, 585 (5th Cir. 2006) (citation omitted)) and requires detention of any person found guilty of an offense listed in § 3142(f)(l)(A)-(C), absent an applicable exception. *See* 18 U.S.C. § 3143(a)(2).

> (2) The judicial officer shall order that a person who has been found guilty of an offense in a case described in subparagraph (A), (B), or (C) of subsection (f)(l) of section 3142 and is awaiting imposition or execution of sentence be detained unless—
>
> > (A)(i) the judicial officer finds there is a substantial likelihood that a motion for acquittal or new trial will be granted; or
> >
> > (ii) an attorney for the Government has recommended that no sentence of imprisonment be imposed on the person; *and*
> >
> > (B) the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community.

*Id.* (emphasis added). In addition, § 3145(c) authorizes release for a defendant subject to mandatory

detention where the defendant: (1) demonstrates by clear and convincing evidence he "is not likely to flee or pose a danger to the safety of any other person or the community" *and* (2) clearly shows "that there are exceptional reasons why [his] detention would not be appropriate." 18 U.S.C. §§ 3143(a)(l) and 3145(c); *see Carr*, 947 F.2d at 1240.

Here, Defendant has been adjudged guilty of Distribution and Possession with Intent to Distribute Methamphetamine, in violation of 21 U.S.C §§ 841(a)(1) and 841(b)(1)(C). (ECF No. 70). This constitutes "'an offense in a case described in subparagraph (A) . . . of subsection (f)(1) of section 3142,' specifically, 'an offense for which a maximum term of imprisonment of ten years or more in the Controlled Substances Act (21 U.S.C. 801 et seq.),'" thereby subjecting Defendant to mandatory detention. *United States v. Perez*, No. 3:18-cr-128-N (2), 2018 WL 6436439, at *1 (N.D. Tex. Dec. 7, 2018); *United States v. Snow*, No. 3:17-cr-341-B (17), 2018 WL 4335816, at *1 (N.D. Tex. Sept. 11, 2018). Defendant argues that allowing her to remain on conditions of release is appropriate under the requirements of 18 U.S.C. §§ 3143(a)(2)(B) and 3145(c). (ECF No. 72, at 4).

The Court initially considers whether Defendant has demonstrated by clear and convincing evidence that, if released, she is not likely to flee or pose a danger to any other person or the community. *See* 18 U.S.C. § 3143(a)(2). Under the record as developed, the Court finds she has done so. Defendant has one brother and five sisters who also reside in the Texas panhandle, including her sister Merce Barns, who has had custody of the Defendant's daughter while Defendant was incarcerated and was present at the hearing for continued release. (Detention Hr'g, Mar. 28, 2024, Audio at 1:41 P.M.; Detention Hr'g, Aug. 30, 2023, Audio at 10:22 A.M.). The Defendant also points to her performance on pretrial release to show her compliance with this Court's orders. (ECF No. 72, at 5-6). Among other things, this Court ordered Defendant to: 1) Remain within a 100-mile radius of Amarillo, Texas; 2) Continue or actively seek employment; 3)

Surrender any passport to the U.S. Probation Officer and not obtain a passport or other international travel document while on release; 4) Not use alcohol excessively; 5) Not use or unlawfully possess a narcotic drug or other controlled substance unless prescribed by a licensed medical practitioner; 6) Submit to random drug testing; 7) Report as soon as possible, to the pretrial services or supervising officer, every contact with law enforcement personnel, including arrests, questioning, or traffic stops; 8) Submit to supervision by and report for supervision to the U.S. Probation Office; and 9) Abstain from the use of any synthetic and/or natural substances to alter mood and/or cognitive ability such as CBD and hemp oils/products. (ECF No. 44).

Defendant's counsel states that they communicated with pretrial release officer Juan Lopez, who "confirmed that no reports of violations or petitions to revoke appeared in Ms. Davila's file and that based on his review Ms. Davila had remained compliant." (ECF No. 72 at 6). The Court notes that Defendant has continued to adhere to the conditions of her release even after pleading guilty to the instant offense on January 22, 2024, presumably understanding that she is now subject to mandatory detention. (*Id.*; ECF No. 59). Further, Defendant has maintained consistent employment in Amarillo since August 22, 2022, and in the time since her release from TDCJ in September of 2022, has maintained housing, transportation, and a stable environment for her son. (Detention Hr'g, Aug. 30, 2023, Audio at 10:16 A.M.); (ECF No. 72-1, at 1). Finally, the Government stated that it does not believe Defendant is a flight risk, noting that although the Defendant's sister, co-defendant Angela Ramona Macias, has failed to appear in this case, the Defendant has complied throughout the entirety of the process. (Detention Hr'g, Mar. 28, 2024, Audio at 1:40 P.M.). The Government also noted that it does not believe that the Defendant is currently involved in the trafficking of drugs, or is engaged in the use of drugs, and therefore does not believe that she poses a danger to any other person or to the community. *Id.*

In sum, the Court finds Defendant has shown by clear and convincing evidence that, if

continued on conditions of release, she is not likely to flee or pose a danger to any other person or the community.

As for the second element, the Fifth Circuit has noted that the "exceptional reasons" provision was added to § 3145(c), in connection with the mandatory detention provisions of § 3143(a)(2) and (b)(2), for the apparent purpose of providing a means of *exceptional* discretionary relief from those compulsory requirements. *Carr*, 947 F.2d at 1240. The United States Court of Appeals for the Second Circuit has defined "exceptional reasons" as "a unique combination of circumstances giving rise to situations that are out of the ordinary," which must be assessed under § 3145(c) on a case-by-case basis. *United States v. DiSomma*, 951 F.2d 494, 497 (2d Cir. 1991); *see United States v. Little,* 485 F.3d 1210, 1211 (8th Cir. 2007) (per curiam) (explaining that, in the context of mandatory detention, "exceptional" means "clearly out of the ordinary, uncommon, or rare" (citation omitted)). In making these determinations, courts should "avoid emasculating the mandatory detention statute" by ensuring that "exceptional reasons review is limited to determining whether remanding the defendant to custody until sentencing would be tantamount to … unjust detention." *United States v. Thomas*, Crim. No. 10-229 (NLH), 2010 WL 3323805, at *2 (D.N.J. Aug. 20, 2010) (citation omitted).

Defendant relies on her "extraordinary efforts to regain custody of her son," as well as the "exceptional risk" to "the well-being of her son" to establish exceptional reasons why her detention would not be appropriate. (ECF No. 72, at 6-8). Although "personal reasons," such as caring for a child or gainful employment, are not in themselves exceptional, a defendant may establish a totality of circumstances "so clearly out of the ordinary, uncommon, or rare as to justify" her continued release under Sections 3143(1)(2) and 3145(c) pending sentencing. *See United States v. Wright*, No. 3:16-cr-373-M (30), 2018 WL 1899289, at *4 (N.D. Tex. April 19, 2018) (collecting non-binding authority to support the assertion that "personal reasons" alone are insufficient to satisfy

the "exceptional reasons" standard).

Here, the Court finds that Defendant has established a totality of circumstances "so clearly out of the ordinary" as to justify her continued release. *Id.* It is the rare case when all parties—including the Government—agree that the best thing for a child is to be with its parent-defendant while the defendant awaits sentencing; here, the *ad litem*, CASA, and CPS caseworker are all in agreement and are strongly advocating for the Defendant to remain with her son until sentencing. (ECF Nos. 72-1, 72-2, 72-4). Defendant's CPS caseworker indicated that Defendant "worked tirelessly" towards reunification, completing "parenting classes, two rounds of individual therapy (12 sessions), family therapy, and random monthly drug screening." (ECF No. 72-1, at 1). In addition, the caseworker states that Defendant "sought out any service she could do while incarcerated," and obtained her GED while in TDCJ custody. (*Id.*) The caseworker also notes that "[i]t would be detrimental to [her son's] mental and physical well-being to have his mother taken away from him again." (*Id.*)

Further, Defendant's son's *ad litem* stated that "when [Defendant] was released she immediately started doing anything and everything to get [her son] home. . . [including] parenting classes, multiple sessions of individual counseling, regular drug testing, got a job, transportation, housing, and then went through a rigorous reunification plan with [her son]." (ECF No. 72-2, at 1). The *ad litem* also stated that there were concerns about the behavior of Defendant's young son, but that his behavior has "improved dramatically" since he has returned to the custody of the Defendant. (*Id.*) The CASA working with Defendant's son confirmed this, stating that "the absence of [Defendant] from [her children's] lives again" will not only "hurt them at present," but make them "prone to developing negative behaviors that will continue to make their lives difficult" in the future. (ECF No. 72-4). Defendant asserts that the professionals involved in her case indicate that allowing her to remain with her children until sentencing would help to reduce the trauma they

would suffer when they are eventually separated. (Detention Hr'g, Mar. 28, 2024, Audio at 1:42 P.M.). Defendant further points to the fact that she was granted parole on a previous incarceration, but chose to remain at TDCJ to complete parenting courses so that she would have a better chance at success when released. (Detention Hr'g, Aug. 30, 2023, Audio at 10:16 A.M.). Finally, the Government is unopposed to this relief, and does not argue that Defendant is a flight risk, poses a danger to the community, or that the risk of further trauma to her young son is not an exceptional circumstance. Defendant asserts that because of the significant strides she has taken to regain custody of her son, including random drug testing, parenting classes, individual and family counseling, obtaining and maintaining a steady job, obtaining housing and transportation, completing her GED, and completing a rigorous reunification plan with her son, she should be continued on conditions of release pending her sentencing hearing.

The Court agrees, particularly where the Government is unopposed to this relief, and where Defendant's assertions are supported by the opinions of three separate, independent professional advocates for her children—the CASA, her son's *ad litem*, and her CPS caseworker. The Court finds that the totality of the facts that Defendant urges as exceptional circumstances are, taken together, a unique combination of circumstances giving rise to a situation that is out of the ordinary among defendants who are on release at the time they are found guilty and in which Defendant's presentencing detention would not be appropriate.

### III. Conclusion

Defendant has demonstrated by clear and convincing evidence that she is not likely to flee or pose a danger to any other person or the community if released under 18 U.S.C. § 3143(a)(2)(B) and has clearly shown exceptional circumstances in accordance with 18 U.S.C. § 3145(c) why she should not be detained pending sentencing. Defendant is therefore ORDERED to remain on release pending sentencing before United States District Judge Matthew J. Kacsmaryk, subject to the terms

of her Appearance Bond and this Court's August 30, 2023, Order Setting Conditions of Release. (ECF No. 41, 44).

    **IT IS SO ORDERED.**

    ENTERED on March 28, 2024.

*/s/ Lee Ann Reno*
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE